IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRITTNEY LEE | : | |
|     PLAINTIFF | : | CIVIL ACTION |
| | : | |
| V. | : | JURY TRIAL DEMANDED |
| | : | |
| SCRANTON SCHOOL DISTRICT | : | |
| | : | NO._____ |
| SHANNON RUCKER | : | |
|     DEFENDANTS | : | |

## COMPLAINT

AND NOW, comes Plaintiff, by and through her Counsel, Comerford Law, who files this Complaint, averring as follows:

1. This action is brought under 42 U.S.C. § 1983 for violations of Plaintiff's rights secured under the First and Fourteenth Amendments to the United States Constitution.

2. This Court has jurisdiction over Plaintiff's § 1983 claims pursuant to 28 U.S.C. §§ 1331 and 1343.

3. Venue is proper in the United States District Court for the Middle District of Pennsylvania under 28 U.S.C. § 1391 because the factual basis for all claims stated herein occurred in the Middle District of Pennsylvania and because Plaintiff and Defendants reside in and/or maintain their principal places of business in the Middle District.

### The Parties

4. Plaintiff, Brittney Lee, is an adult, competent individual residing at 317 Crisp Ave. Scranton, Pennsylvania.

5. Defendant Scranton School District ("Defendant SSD") is a public school district organized under the laws of the Commonwealth of Pennsylvania, whose administrative offices are located at 425 N Washington Avenue, Scranton, Pennsylvania.

6. Defendant Rucker ("Defendant Rucker") is an adult, competent individual who, at all times relevant to this Complaint, was employed by Defendant SSD as principal of Isaac Tripp Elementary School ("Isaac Tripp"), acting under the power, control, and authority of Defendant SSD and under color of state law. Defendant Rucker's offices are located at 1000 North Everett Ave, Scranton, Pennsylvania. Defendant Rucker is being sued in her individual capacity.

## The Facts

7. In 2014, Plaintiff was hired by Defendant SSD as a paraprofessional at Isaac Tripp.

8. In this position, Plaintiff worked in the autistic support classroom.

9. Plaintiff's duties included, but were not limited to, working one on one and in small groups with children who have autism, keeping the children safe, assisting with feeding, and changing diapers.

10. Plaintiff was a model employee.

11. Plaintiff currently holds that position.

12. In addition to being an employee of Defendant SSD, Plaintiff's children attend Isaac Tripp.

13. Plaintiff's older child graduated from Isaac Tripp in June 2022, but her younger daughter is currently a student.

14. Plaintiff and her daughter enter and exit the school together each day and see each other periodically throughout the day.

15. In addition to being a paraprofessional at Isaac Tripp, Plaintiff is also a very involved parent.

16. Plaintiff was a member of the Parent Teacher Association ("PTA") until the entire PTA Board resigned in early February 2023.

17. In her role as a PTA member and parent, Plaintiff made complaints to Defendant Rucker about her cancellation of Isaac Tripp's Halloween Parade and Christmas party.

18. Defendant Rucker's attitude towards Plaintiff changed immediately after she made these complaints.

19. In or around November 2022, Plaintiff put an evergreen tree in her classroom for decoration.

20. On December 1, 2022, Defendant Rucker sent two representatives from the Union to tell her to take the tree down, as it was in violation of her directive.

21. Plaintiff contacted her union president, who advised that Plaintiff may continue to have an evergreen tree in her classroom and that this was not in violation of any SSD policy.

22. On or about Monday, January 30, 2023, Tim Wolff, Director of Human Resources for Defendant SSD, advised Plaintiff that a report was made that there may have been some inappropriate physical contact with a student.

23. Mr. Wolff further advised that a Childline report would be filed, an investigation would be completed, and that she would be suspended until further notice, pending the investigation.

24. On February 2, 2023, The Department of Health and Human Services Office of Youth & Family Services ("OYFS") sent a letter to Plaintiff, advising that they were conducting an investigation.

25. February 14, 2023, Defendant Rucker contacted Plaintiff to set up a union meeting for the following day, February 15, 2023.

26. At the February 16, 2023, meeting, Mr. Wolff advised that based on video footage and witness statements, it was determined that Plaintiff did aggressively grab one of the autistic support children and move him to a cafeteria table.

27. This was not true.

28. Plaintiff merely stopped a student from fleeing the cafeteria, as she had been taught during numerous trainings provided by Defendant SSD.

29. The instant was captured on video, and the video supports Plaintiff's version of events, proving that she did <u>nothing</u> wrong.

30. On or about February 24, 2023, OYFS completed their investigation and determined the allegations were unfounded.

31. OYFS relayed this to Defendant SSD via letter and phone call.

32. Plaintiff's version of events is supported by the OYFS investigation and results.

33. Upon her return to work on February 21, 2023, Plaintiff was subject to a "Safety Plan". A true and complete copy of the "Safety Plan" is attached hereto as Exhibit A.

34. The Safety Plan alleges that she grabbed a student by the arm, pointed her finger in his face yelled at him, and aggressively grabbed another

student twice – an allegation which had never before been made and which is wholly untrue.

35. Defendant SSD has not made any further mention or elaborated on the allegations in the Safety Plan regarding a second student.

36. The Safety Plan requires that Plaintiff is not to be left alone in the school at all, must be escorted to/from the classroom, and is not allowed in the cafeteria, among other unnecessary and overburdensome restrictions.

37. The Safety Plan was updated on February 23, 2023 to state the need to be escorted to and from specials.

38. The Safety Plan does not mention an end date to the restrictions.

39. As Plaintiff is no longer allowed to do morning or lunch duty, she is also missing out on extra pay.

40. Plaintiff's minor child must watch her mother be escorted around the building every day, and they are not allowed to enter or exit the building alone.

41. The plan is so demeaning, restrictive, oppressive, and invasive that it requires that she be escorted to and from the bathroom.

### Count I: 18 U.S.C. § 1983: *Monell* Liability

42. All other paragraphs of this Complaint, both preceding and following this averment, are hereby incorporated by reference as if set forth in full within this subsection.

43. Plaintiff spoke out against Defendant Rucker's actions as principal of Isaac Tripp.

44. She did so in her individual capacity as parent and PTA member.

45. As a result, Defendants retaliated against her by placing her on a restrictive "safety plan."

46. This plan was not rationally related to Plaintiff's conduct and was designed merely as retaliation for her complaints.

47. Defendant Rucker knew of Plaintiff's protected speech as the complaints were directed right to her.

48. The retaliation was close in time to the protected speech.

49. Furthermore, Plaintiff was treated differently to employees who were similarly situated and not placed on such a safety plan.

50. This adverse employment action against Plaintiff constitutes Retaliation for exercising his First Amendment Right under the United States Constitution to Freedom of Speech.  Any other reason is mere pretext.

51. In placing Plaintiff on an overly burdensome Safety Plan, Defendants, acting under color of state law, acted with deliberate indifference to his Constitutional Right.

52. This treatment has caused Plaintiff significant emotional pain and suffering as well as humiliation.

53. Defendant Rucker is a policymaker for Defendant SSD, subjecting them to *Monell* liability.

WHEREFORE, Plaintiff respectfully requests that Judgment be entered in her favor and that she be granted: (1) injunctive relief ordering that her safety plan be terminated; (2) compensatory damages for back pay, lost future earnings, pain and suffering, and humiliation; (3) attorney's fees pursuant to 18 U.S.C. § 1988.

### Count II: 18 U.S.C. § 1983: First Amendment Retaliation

**Plaintiff v. Defendant Rucker**

54. All other paragraphs of this Complaint, both preceding and following this averment, are hereby incorporated by reference as if set forth in full within this subsection.

55. The adverse employment action against Plaintiff as described above constitutes Retaliation for exercising his First Amendment Right under the United States Constitution to Freedom of Speech.

56. In placing Plaintiff on an overly burdensome Safety Plan, Defendants, acting under color of state law, acted with deliberate indifference to his Constitutional Right.

WHEREFORE, Plaintiff respectfully requests that Judgment be entered in her favor and that she be granted: (1) injunctive relief ordering that her safety plan be terminated; (2) compensatory damages for back pay, lost future earnings, pain and suffering, and humilation; (3) attorney's fees pursuant to 18 U.S.C. § 1988.

Respectfully Submitted

*Comerford Law*

*Curt Parkins*

*Jennifer Kapp*

_____

Curt M. Parkins, Esquire
Jennifer Kapp, Esq.
Attorneys for Plaintiff
539 Biden St., Ste 430
Scranton, PA 18503
(570) 880-0777
Fax: (570) 880-0476
curt@comerfordparkins.com