## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRITTNEY LEE,** | : | **No. 3:23cv648** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **SCRANTON SCHOOL DISTRICT and** | : | |
| **SHANNON RUCKER,** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

### MEMORANDUM

Before the court is a motion to dismiss filed by Defendants Scranton School District and Shannon Rucker pursuant to Federal Rule of Civil Procedure 12(b)(6).  Having been fully briefed, this matter is ripe for disposition.

**Background**

Plaintiff Brittney Lee is employed as an autistic support paraprofessional at Issac Tripp Elementary School ("Issac Tripp") in the Scranton School District.[1] (Doc. 10, Am. Compl. ¶¶ 7-8, 11).  Plaintiff is also an actively involved parent of a student at the school and a former member of the school's parent-teacher association ("PTA"). (Id. ¶¶ 12-13, 15-16).

---

[1] These background facts are derived from plaintiff's complaint.  At this stage of the proceedings, we must accept all factual allegations in the complaint as true.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  The court makes no determination, however, as to the ultimate veracity of these assertions.

Defendant Shannon Rucker was the principal at Issac Tripp during the

2022-2023 school year. (Id. ¶¶ 6, 18).  Rucker cancelled Issac Tripp's Halloween

parade and Christmas party that year. (Id. ¶¶ 18, 21).  Per plaintiff, the other

elementary schools in the Scranton School District continued celebrating "the old

traditions." (Id. ¶ 21).

In November 2022, Rucker emailed faculty and staff about her new holiday

celebration policy. (Id., Exh. B, Rucker Email, 11/13/2022).  She explained:

> The Holiday Season at Isaac Tripp should and will look
> different this year. Our decorations will be different, and we
> will focus on a Winter Wonderland "in Paradise" theme
> (lights, snowmen, snowflakes, and lighted palm trees) that
> isn't focused on one custom or tradition. Contrary to
> popular belief, I'm not against Halloween, Halloween
> costumes, Christmas, Christmas trees/Santa, or any
> specific targeted demographic holiday. I fully support these
> activities in after-school settings where families have a
> choice to attend and participate. School is not a choice; it
> is mandatory. Therefore, we shouldn't exclude, force
> unwanted participation or make anyone uncomfortable at
> school. We also shouldn't be causing segregation among
> friends when a student's family believes in something and
> can experience it, and another student's family does not
> and can not participate. What if you were the child who had
> to sit out while your friends participated? What if your child
> had different customs and beliefs exposed to them that you
> weren't comfortable with or forced on them? Please put
> yourself in the position of these young children or as a
> parent. These are some of the many things I constantly
> think about.
>
> The world and our district are changing, and we need to
> adapt. I understand change is unpopular and difficult, but

> being inclusive is necessary and a must to maintain a
> positive school culture and climate.

(Id.)

Plaintiff alleges that "in her individual capacity as a parent and PTA member[,]" she complained to Defendant Rucker about the changes either before or after this email. (Id. ¶¶ 18, 63). Ultimately, Issac Tripp's entire PTA board resigned a few months later and Rucker made comments to *The Scranton Times-Tribune* that issues with the PTA began when she announced plans for more inclusive school events.[2] (Id. ¶¶ 16-17).

In November 2022, plaintiff also placed an evergreen tree in her classroom for decoration. (Id. ¶ 22). As alleged, on December 1, 2022, Defendant Rucker sent two union representatives to tell plaintiff to take the tree down for violating her directive regarding holiday celebrations.[3] (Id. ¶ 23). Plaintiff's union president told plaintiff that she was not violating any school district policy and plaintiff kept the tree displayed. (Id. ¶ 24).

The school then presumably enjoyed its winter break. After the break, however, plaintiff was the subject of a report that she made "inappropriate

---

[2] Plaintiff attached the related article to her amended complaint. Sarah Hofius Hall, *Issac Tripp reorganizing PTA after entire board resigns*, THE SCRANTON TIMES-TRIBUNE, Feb. 26, 2023, at A3. (Doc. 10, Exh. A). In the article, the reporter attributes a position to Rucker without quoting her directly. (Id.)

[3] Plaintiff's employment is subject to a Paraprofessional Collective Bargaining Agreement with the Scranton School District. (See Doc. 10, Am. Compl. Exh. D.).

physical contact with a student." (Id. ¶ 26).  On January 30, 2023, Defendant Scranton School District's human resources ("HR") director informed plaintiff that the incident would be relayed to ChildLine.[4] (Id. ¶ 27).  The school district suspended plaintiff. (Id. ¶ 27).  Lackawanna County's Office of Youth and Family Services ("OYFS") advised plaintiff it was conducting a child abuse investigation. (Id. ¶¶ 28).  The school district also began its own investigation. (Id. ¶ 29).

At a later meeting with plaintiff, plaintiff's union representative, and Defendant Rucker present, the HR director stated that plaintiff aggressively grabbed the student and moved him to a cafeteria table. (Id. ¶ 33).  Plaintiff alleges that she merely stopped a student with autism from fleeing the cafeteria, applying lessons from trainings provided by the school district.  (Id. ¶ 35). Plaintiff asserts that the incident was captured on video and proves that she did nothing wrong.  (Id. ¶ 36).

OYFS completed their investigation on February 24, 2023, and determined that the child abuse allegations were unfounded. (Id. ¶ 37).  At no time, according to plaintiff, has the Scranton School District informed her of the results of their internal investigation. (Id. ¶ 30).

---

[4] ChildLine is a unit of the Pennsylvania Department of Human Services, which operates a toll-free system of receiving reports of child abuse as established through Pennsylvania's Child Protective Services Law ("CPSL"). See 23 PA. CONS. STAT. § 6332, 55 PA. CODE § 3490.4.

Plaintiff returned to work on February 21, 2023.  (Id. ¶ 40).  Rucker, however, imposed a "Safety Plan" on plaintiff.  (Id. ¶ 40 & Exh. C).  The district superintendent and other administrators were copied on the plan. (Id. ¶ 41).  Per the Safety Plan, plaintiff could not be left alone while working at Issac Tripp and had to be escorted to and from the classroom. (Id. ¶ 44).  She was prohibited from the school cafeteria and could not earn extra pay supervising morning arrival or lunchtime. (Id. ¶ 47).  Plaintiff's minor child, a student at the school, had to watch her mother be escorted around the building each day and the two were not permitted to enter and exit the building alone. (Id. ¶ 48).  Furthermore, plaintiff was escorted to and from the bathroom. (Id. ¶ 49).

The Safety Plan was ultimately lifted on April 16, 2023, around the time that plaintiff filed this action. (Id. ¶¶ 46, 57).   Per plaintiff, another Scranton School District employee was accused of causing bodily injury to a student but was permitted to go back to work without a Safety Plan after OYFS closed its investigation.  (Id. ¶ 55).

Based upon the above allegations, plaintiff filed this Section 1983 action for First Amendment retaliation.  Count I of the amended complaint alleges that Rucker qualifies as an official policymaker to establish liability against the Scranton School District pursuant to Monell v. New York City Dept. of Social

Servs., 436 U.S. 658 (1978). (Id. ¶¶ 61-72).  Count II of the complaint asserts a

Section 1983 claim against Rucker in her individual capacity. (Id. ¶¶ 73-75).

Defendants responded to the amended complaint with the instant motion to

dismiss. (Doc. 11).  This matter is now ripe for a decision.

**Jurisdiction**

Based on plaintiff's Section 1983 claims, this court has jurisdiction pursuant

to 28 U.S.C. § 1331. ("The district courts shall have original jurisdiction of all civil

actions arising under the Constitution, laws, or treaties of the United States.").

Additionally, the court has jurisdiction under 28 U.S.C. § 1343(a)(3), which

confers jurisdiction of any action commenced to redress the deprivation of any

right, privilege, or immunity secured by federal law providing for the equal rights

of citizens.

**Legal Standard**

Defendant filed the instant motion to dismiss pursuant to Federal Rule of

Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be

granted.  The court tests the sufficiency of the complaint's allegations when

considering a Rule 12(b)(6) motion.

To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550

U.S. 544, 570 (2007)). A claim has facial plausibility when factual content is pled that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. (citing Twombly, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

On a motion to dismiss for failure to state a claim, district courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. See Phillips, 515 F.3d at 233 (citations omitted).

**Analysis**

Plaintiff filed this action against Defendants Rucker and Scranton School District pursuant to Section 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. See Gonzaga Univ. v. Doe, 536 U.S. 273, 284–85 (2002). To establish a claim under Section 1983, two criteria must be met. First, the conduct complained of must have been committed by a person acting under color of state law. Sameric Corp. of Del., Inc. v. City of Phila., 142

F.3d 582, 590 (3d Cir. 1998).  Second, the conduct must deprive the plaintiff of rights secured under the Constitution or federal law. Id.

In the motion to dismiss, defendants argue that plaintiff has failed to plausibly state the elements of a Section 1983 claim for First Amendment retaliation.  Additionally, defendants also argue that plaintiff's municipal liability claim fails because Rucker was not a final policymaker with the requisite authority to impose liability on the Scranton School District.  The court address these arguments *seriatim*.

### 1. Plaintiff's First Amendment Retaliation Claim

Plaintiff is an employee of a public school.  First Amendment protection of a public employee's speech "depends on a careful balance 'between the interests of the employee, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.' " Lane v. Franks, 573 U.S. 228, 231 (2014) (quoting Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cnty., Illinois, 391 U.S. 563, 568 (1968)).  "[C]itizens do not surrender their First Amendment rights by accepting public employment." Id.

In order to state a retaliation claim, a public employee must first demonstrate that her speech is protected by the First Amendment.  Flora v. Cnty.

of Luzerne, 776 F.3d 169, 174 (3d Cir. 2015).  A public employee's statement is

protected by the First Amendment when:

> (1) in making it, the employee spoke as a citizen, (2) the
> statement involved a matter of public concern, and (3) the
> government employer did not have 'an adequate
> justification for treating the employee differently from any
> other member of the general public' as a result of the
> statement he made.

Hill v. Borough of Kutztown, 455 F.3d 225, 241–42 (3d Cir. 2006) (quoting
Garcetti v. Ceballos, 547 U.S. 410, 418 (2006); see also De Ritis v. McGarrigle,
861 F.3d 444, 452 (3d Cir. 2017)(citing Munroe v. Central Bucks Sch. Dist., 805
F.3d 454, 466 (3d Cir. 2015)).

As the Supreme Court has concluded, "when public employees make

statements pursuant to their official duties, the employees are not speaking as

citizens for First Amendment purposes, and the Constitution does not insulate

their communications from employer discipline."  Garcetti v. Ceballos, 547 U.S.

410, 421 (2006).   "[S]peech may be protected 'even if it concerns information

related to or learned through public employment[.]' " De Ritis, 861 F.3d at 454

(quoting Lane, supra).  But "an employee does not speak as a citizen if the mode

and manner of his speech were possible only as an ordinary corollary to his

position as a government employee." Id.  Accordingly, defendants first argue that

plaintiff's speech is not protected because she spoke out about the school

holiday party cancellations as a school employee and not as a citizen.

Regarding this first sub-element to a First Amendment retaliation claim, defendants emphasize that plaintiff has not specifically pled the context of her statements to Rucker.  As a result, defendants ask the court to essentially presume that plaintiff spoke as an employee. (See Doc. 12, Df. Br. in Supp. at p. 10-12).  On a motion to dismiss, however, the allegations of plaintiff's amended complaint must be construed in a light most favorable to plaintiff.  She has averred that she made the statements to Rucker as a parent of a student at Issac Tripp and a member of the school PTA.  Moreover, plaintiff has made allegations that the parent community and school PTA were upset over Rucker's approach to holiday celebrations to the extent that the entire PTA board ultimately resigned.  These allegations make it plausible that plaintiff made her statements to Rucker as a parent and PTA member.

Paraprofessionals are not teachers; they work "under the direction of a certificated staff member to support and assist in providing instructional programs and services to children with disabilities[.]" 22 PA. CODE. § 14.105.  Plaintiff alleges in her amended complaint that she was employed to work "one on one and in small groups with children who have autism," keep them safe, feed them, and address any incontinence. (Doc. 10 ¶ 9).  At this stage, it would be error to resolve any factual disputes about the context of plaintiff's speech and determine whether the speech was part of plaintiff's official job duties as a paraprofessional.

See Flora, 776 F.3d at 176.  Discovery will reveal the actual context of plaintiff's statements to Rucker and defendant's arguments are more appropriate to consider at the summary judgment phase.

Defendants also argue that the lack of context means that plaintiff failed to demonstrate that her statement involved a matter of public concern, that is the second sub-element required to establish a First Amendment retaliation claim. Plaintiff counters that Rucker's changes to Issac Tripp's holiday celebrations and the PTA reaction to these changes were newsworthy enough to be reported on by The Scranton Times-Tribune.  (Doc. 13, Pl. Br. in Opp. at 9–10).  Moreover, this entire saga apparently resulted in the Scranton School Board weighing an official policy regarding the celebration of holidays in its schools. (Doc. 10, Am. Coml. at ¶ 59).

"Speech involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." Lane, 573 U.S. at 241 (citing Snyder v. Phelps, 562 U.S. 443, 453 (2011)(internal quotation marks and further citations omitted).  Moreover, "[d]eciding whether speech is of public or private concern requires [the court] to examine the content, form, and context of that speech, as revealed by the whole record." Snyder, 562 U.S. at 453 (internal

11

quotation marks and citations omitted).  The whole record is not before the court. On the facts pled, plaintiff has plausibly stated that her speech concerned matters of social and community interest.  Defendants' arguments are thus rejected as to the first element of plaintiff's claim, that her speech was protected.

The court turns next to the second element required by a First Amendment retaliation claim.  In addition to demonstrating protected speech, a public employee must also show that "the speech was a substantial and motivating factor in what is alleged to be the employer's retaliatory action." Flora, 776 F.3d at 174 (citing Gorum v. Sessoms, 561 F.3d 179, 184 (3d Cir. 2009)).

Plaintiff concedes that an allegation of physical abuse was made against her that the defendants had a duty to investigate. (Doc. 13, Pl. Br. in Opp. at 10). Per plaintiff's allegations, however, the Safety Plan imposed by Rucker on plaintiff upon her return to work was so "demeaning, restrictive, oppressive, and invasive[,]" that it was retaliation for plaintiff's comments about changing holiday celebrations at Issac Tripp. (Doc. 10, Am. Compl. at ¶¶ 49, 64-67).  Moreover, plaintiff complains that the Safety Plan was imposed on her indefinitely and she was under its restrictions for almost two additional months after she was cleared of child abuse by Lackawanna County OYFS.  (See id. at ¶¶ 37, 57).  Plaintiff also alleges that another school district employee accused of causing bodily

injury to a student went back to work without a Safety Plan upon the closure of an OYFS investigation. (Id. ¶ 54).

Nonetheless, defendants argue that there is no causal connection between plaintiff's speech and the allegedly retaliatory restrictions in the safety plan. Plaintiff, however, has pled sufficient facts to survive the motion to dismiss. Plaintiff alleges that she received overly harsh discipline when accused of physical abuse and that the discipline continued after the report of abuse was determined to be unfounded under Pennsylvania law.  Since these measures were imposed on plaintiff only a few weeks after the holiday season and despite video evidence allegedly vindicating plaintiff's position, a reasonable inference may be drawn from the amended complaint that plaintiff's comments to Rucker about changing holiday celebrations at Issac Tripp were a substantial and motivating factor in Rucker's imposition of the specifically restrictive Safety Plan conditions.

Plaintiff has also attached an email from Rucker indicating that fully inclusive holiday celebrations were "some of the many things [Rucker] constantly [thought] about." (Doc. 10, Am. Compl. ¶ 21, Exh. B).  That email also permits an inference that an ongoing negative community reaction to Rucker's holiday policy was also weighing on her mind, not just the reaction from teachers and staff, but from parents and the PTA.  (Id. ("Contrary to popular belief, I'm not against

Halloween, Halloween costumes, Christmas, Christmas trees/Santa, or any specific targeted demographic holiday.").  In light of these allegations, plaintiff has demonstrated a plausible First Amendment retaliation claim and defendants' motion to dismiss will thus be denied.

## 2. Whether Rucker's Alleged Conduct Can Establish a Section 1983 Claim Against the School District

Plaintiff's First Amendment retaliation claim in Count I is asserted against the Scranton School District, a municipal subunit in the Commonwealth of Pennsylvania. See 53 PA. STAT. § 7101 (defining "municipality" to include school districts).  Defendants argue that plaintiff cannot proceed with a municipal liability claim against the Scranton School District based on the actions of Defendant Rucker as Issac Tripp's school principal.

As noted above, plaintiff's claims against the school district proceed pursuant to Monell and subsequent case law clarifying the boundaries of municipal liability. See 436 U.S. at 690.  Local governments may not be sued under Section 1983 for injuries solely inflicted by its employees; rather, the injuries must be inflicted by execution of a government's policy or custom by lawmakers or by "those whose edicts or acts may fairly be said to represent official policy." Id. at 694.  "[A] municipality cannot be held liable under § 1983 on a respondeat superior theory." Id. at 691.

14

"Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick v. Thompson, 563 U.S. 51, 61 (2011)(citations omitted).  A policy need not be passed by a legislative body, or even be in writing, to constitute an official policy; a pertinent decision by an official with decision-making authority on the subject constitutes an official policy.  Porter v. City of Philadelphia, 975 F.3d 374, 383 (3d Cir. 2020)(citing Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986)) . Moreover, "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances[,]" but liability only attaches "where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." Pembaur, 475 U.S. at 480-81 (footnote omitted).  An official has final policymaking authority if "as a matter of state law, the official is responsible for making policy in the particular area of municipal business in question" and if "the official's authority to make policy in that area is final and unreviewable." Hill v. Borough of Kutztown, 455 F.3d 225, 245 (3d Cir. 2006) (internal citations omitted) (emphasis removed). "Proving that a municipal official is a final policymaking authority is a fundamental element" of a Section 1983 action.  LaVerdure v. Cnty. of Montgomery, 324 F.3d 123, 126 (3d Cir. 2003).

Defendants argue that Rucker is not a final policymaker as Issac Tripp's school principal. (Doc. 12, Df. Br. in Supp. at p. 19). Plaintiff counters that Scranton School District's superintendent made public statements about building principals being afforded discretion as to how to celebrate holidays.[5] (Doc. 13, Pl. Br. in Opp. at p. 12). Additionally, the court notes that Rucker had the apparent authority to impose the Safety Plan on plaintiff when she returned to work as a paraprofessional.

The court must make authority determinations as a matter of state law. The parties, however, have not cited any provisions of Pennsylvania's Public School Code of 1949, 24 PA. STAT. § 1-101, *et seq.* nor any state education regulations, 22 PA. CODE § 1.1, *et seq.* The parties also have not provided Scranton School District policies relative to employee conduct, disciplinary proceedings, or safety plans. Rather, plaintiff alleges that her Employee Handbook "does not contain any specific policies that [Scranton School District] follows with regard to investigating allegations of wrongdoing made against its employees." (Doc. 10, Am. Compl. ¶ 31).

---

[5] Plaintiff attached a front-page article from *The Scranton Times-Tribune* to her amended complaint, Sarah Hofius Hall, *Directors consider policy for holiday activities*, THE SCRANTON TIMES-TRIBUNE, June 21, 2023 at A1, A9. (Doc. 10, ¶ 59, Exh. E). In the article, the reporter attributes a position to Scranton School District Superintendent Melissa McTiernan without quoting her directly. (Id.)

"Under Pennsylvania law, a school board may be the final policymaker with respect to some actions, while the school superintendent may be the final policymaker with regard to other actions." See G.S. v. Penn-Trafford Sch. Dist., 20-3281, 2023 WL 4486667, at *3 & n. 29 (3d Cir. July 12, 2023)(non-precedential)(citing McGreevy v. Stroup, 413 F.3d 359, 368–69 (3d Cir. 2005)); see also E.N. v. Susquehanna Twp. Sch. Dist., No. 1:09-CV-1727, 2011 WL 3608544, at *8 (M.D. Pa. July 5, 2011), report and recommendation adopted, No. 1:09-CV-1727, 2011 WL 3608490 (M.D. Pa. Aug. 16, 2011)("The final policy maker for a school district in Pennsylvania is typically the school board or the superintendent."). On the other hand, "[a]n employee who lacks policymaking authority can still bind the municipality if a municipal policymaker delegated power to the employee or ratified [her] decision." Kelly v. Borough of Carlisle, 622 F.3d 248, 264 (3d Cir. 2010)(citing LaVerdure, 324 F.3d at 125); see also City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988) (plurality opinion).

At this juncture, it is plausible that the Scranton School District board and/or superintendent delegated decision-making in these areas to building principals such as Defendant Rucker. Furthermore, if the superintendent was the final policymaker regarding paraprofessional discipline, plaintiff has alleged facts that the superintendent was at least aware of Rucker's decisions regarding plaintiff. Consequently, the best course of action is to allow plaintiff's municipal liability

17

claim to proceed with discovery and defendants' <u>Monell</u> arguments can be revisited on a motion for summary judgment.  The motion to dismiss will thus be denied.

**Conclusion**

For the reasons set forth above, defendants' motion to dismiss plaintiff's amended complaint (Doc. 11) will be denied.  An appropriate order follows.

Date: 6/6/24

**JUDGE JULIA K. MUNLEY**
**United States District Court**

18